UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Willie D. Buckhana, | ) |
|       Petitioner, | ) ) ) |
|       v. | ) No. 24-cv-1427 ) ) Judge April M. Perry |
| Felicia Adkins, Warden, Danville Correctional Center, | ) ) ) |
|       Respondent. | ) ) |

**OPINION AND ORDER**

This case is before the Court on the petition of Willie D. Buckhana, an Illinois prisoner, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the Court denies the petition.

**BACKGROUND**[1]

On August 16, 1999, Anthony Cooper, Tremayne Thomas, Taiwon Jackson, and Corey Boey were shot at an apartment building in Elgin, Illinois. *People v. Buckhana*, 2023 IL App (2d) 210655-U, 2023 WL 3563212, at *1 (May 19, 2023). Only Boey survived. *Id.* Petitioner and seven others were implicated in the shootings. *Id.* Petitioner subsequently was charged with three counts of first-degree murder, one count of attempted first-degree murder, and one count of aggravated battery with a firearm. *Id.* The case went to trial in the Circuit Court of Kane County.

Two cooperating defendants testified at Petitioner's trial. First was Willie Fullilove, who also had been charged with three counts of first-degree murder, one count of attempted first-

---

[1] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must presume that state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1). This presumption can be overcome if the petitioner rebuts those facts by clear and convincing evidence, which Petitioner has not attempted to do. The following summary of facts is derived from the Illinois Appellate Court's opinion affirming the denial of Petitioner's post-conviction petition. *People v. Buckhana*, 2023 IL App (2d) 210655-U, 2023 WL 3563212 (May 19, 2023).

degree murder, and one count of aggravated battery with a firearm, but entered into a plea agreement for aggravated battery with a firearm and received a twenty-year sentence in exchange for his truthful testimony. *Id.* at 2. Fullilove testified at Petitioner's trial that he saw Petitioner with a firearm immediately before the shooting, and Petitioner told Fullilove that he was going to the victims' apartment to "squash" an issue. *Id.* at 2–3. Fullilove admitted on cross-examination to having previously made numerous false and inconsistent statements to police about the shooting. *Id.* at 3. The second cooperating defendant was Kewhan Fields, who testified at Petitioner's trial pursuant to a plea agreement that had the same terms as Fullilove's plea agreement. *Id.* Fields testified that Petitioner had passed out firearms to several others before going to the victims' apartment and instructed the others to hurt or kill the victims if they "get out of line." *Id.* at 4. Fields further testified that when they got to the victims' apartment a fight ensued and Petitioner and Sherman Williams both pulled out their guns and shot toward Cooper and then went into the victims' apartment and more shots were fired. *Id.* As they drove away from the shooting, Fields testified that Petitioner admitted to shooting someone in the head and asked "did we kill everybody?" *Id.* On cross-examination, Fields agreed that when he first spoke to the police, he claimed that he was not at the apartment building where the shootings took place and had nothing to do with the shootings. *Id.* Fields also admitted that he later told the State that Williams shot Cooper, and that at another co-defendant's trial he had testified that he did not know who had held various guns. *Id.*

Corey Boey, the only surviving victim, also testified at Petitioner's trial. *Id.* at 6. Boey testified that Petitioner was present during the shooting, but that it was Williams who shot Jackson and Thomas in the head. *Id.* Boey testified that he then rolled onto the floor and did not see the face of his shooter. *Id.* On cross-examination, Boey testified that he did not remember

giving a tape-recorded statement to the police on August 18, 1999, in which Boey identified Chris Smith as his shooter and said he did not know who else had entered the apartment, nor did Boey remember later telling one of the detectives that he was nervous about testifying against Smith. *Id.* Boey also claimed not to remember earlier testimony he had given about telling a detective that Smith shot him. Boey testified that he had been experiencing memory problems since the shooting. *Id.*

A detective also testified at Petitioner's trial about post-arrest admissions made by Petitioner and played a tape recording of Petitioner's statement to police. *Id.* at 8–11. In that statement, Petitioner acknowledged being with Fullilove, Fields, Williams, and others prior to the shooting, and that everyone but Petitioner was given a gun. *Id.* at 9. Petitioner then acknowledged that all of them went to the apartment building, although Petitioner claimed he was just there for a drug deal. *Id.* Petitioner further acknowledged being outside of the landing with the others at the time the argument began with the victims, and then watching several of the others shoot. *Id.* at 10. Petitioner also admitted that he left in the same van with the shooters and was present when they disposed of the firearms used in the shootings. *Id.* at 11. The detective testified that the firearms used in the shootings were later found in the location where Petitioner had told him they had been dumped. *Id.*

Finally, an expert in street gangs testified that Petitioner, Smith, Fields, Fullilove, and Williams were all active members of the Black Disciples. *Id.* at 8, 14. According to the gang expert, Petitioner was the head of security, which made him the third-highest ranking member of the gang. *Id.*

Petitioner was convicted by a jury of three counts of first-degree murder and one count of aggravated battery with a firearm. *Id.* at 1. Petitioner appealed his convictions on several

grounds, including sufficiency of the evidence. *See* Doc. 27-1 at 25–50. The Illinois appellate court affirmed Petitioner's convictions and sentence, and the Illinois Supreme Court denied his petition for review. Doc. 27-1 at 51; Doc. 27-3. Petitioner then brought state post-conviction proceedings collaterally attacking his convictions on several grounds. The Illinois court of appeals affirmed the denial of his post-conviction petitions, *People v. Buckhana*, 2023 IL App (2d) 210655-U, 2023 WL 3563212 (May 19, 2023), and the Illinois Supreme Court denied Petitioner's petition for leave to appeal. Doc. 27-9.

## ANALYSIS

A habeas petitioner first must exhaust available state court remedies as to each claim before seeking relief under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b); *Rose v. Lundy,* 455 U.S. 509, 515 (1982). To fulfill the exhaustion requirement, Petitioner must present his claims to the state courts fully and fairly, invoking "one complete round" of the state's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). In Illinois, one complete round of review includes a petition for leave to appeal to the Illinois Supreme Court, whether on direct appeal or in state post-conviction proceedings. *Id.*; *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) ("To exhaust state remedies in the Illinois courts, the prisoner must include his claims in a petition for leave to appeal to the Illinois Supreme Court.").

Petitioner raises four claims in his habeas petition: (1) ineffective assistance of counsel at trial and on appeal for failure to call law enforcement witnesses to impeach the cooperating witnesses; (2) ineffective assistance of counsel at trial and on appeal for failure to request an accomplice-witness jury instruction; (3) insufficiency of the evidence; and (4) prosecutorial misconduct based upon submission of perjured testimony. Doc. 1 at 23-24. For the following

reasons, the Court concludes that Petitioner has not properly exhausted any of these claims in state court.

First, Petitioner claims that his trial counsel was ineffective by failing to prove up with extrinsic evidence the impeachments of Fields. Although Petitioner acknowledges that trial counsel cross-examined Fields on numerous inconsistent statements, Petitioner takes issue with the fact that additional evidence, in the form of police reports or law enforcement testimony, was not presented by counsel. Doc. 1 at 26–30. This claim of error has never been presented to an Illinois court for review. Petitioner did not raise this claim on direct appeal to the Illinois appellate court or Supreme Court. Doc. 27-1; Doc. 27-2. And though Petitioner initially raised this claim in his *pro se* post-conviction petition, Doc. 27-10 at 24, it was not included in his amended post-conviction petition, Doc. 27-4 at 85–86, second amended post-conviction petition, Doc. 27-7 at 4, post-conviction appeals, Doc. 27-4 at 5; Doc. 27-7, or post-conviction petition for leave to appeal to the Illinois Supreme Court, Doc. 27-8 at 1–2. Petitioner has thus failed to exhaust this claim. *See Snow*, 880 F.3d at 864.

Petitioner's second argument is that counsel was ineffective for failing to request an instruction cautioning the jury that accomplice testimony should be considered with great care. Specifically, Petitioner argues that the jury should have been given Illinois Pattern Jury Instruction 3.17. Doc. 1 at 32. The Court notes, however, that the jury was given that instruction. *See* Doc. 27-1 at 30 ("The court fully instructed the jury that the testimony of an accomplice is subject to suspicion and should be considered with caution. See Illinois Pattern Jury Instructions, Criminal, No. 3.17."). Presumably for that reason, Petitioner's complaint was not raised on direct appeal or included in any of his post-conviction proceedings that were presented to Illinois

courts. Therefore, in addition to being patently without merit, Petitioner has failed to exhaust this claim.

Third, Petitioner raises a claim of insufficient evidence to support his convictions. Petitioner raised this claim on direct appeal but did not include this claim in his petition for leave to appeal to the Illinois Supreme Court. Doc. 27-2 at 3. In his post-conviction proceedings, Petitioner did not raise this claim at all. Petitioner has thus failed to exhaust this claim.

Finally, Petitioner claims that his right to a fair trial was violated when the prosecution called Corey Boey to testify against him, knowing that Boey's testimony would not be truthful. Doc. 1 at 39. Petitioner did not raise this claim during direct appeal or during state post-conviction proceedings.[2] Petitioner has therefore failed to exhaust this claim as well.

Having concluded that Petitioner has failed to exhaust all of his current claims, the Court next turns to the question of whether this petition should be denied as procedurally defaulted, or dismissed or stayed while Petitioner seeks to exhaust available state court remedies. In Illinois, the Post-Conviction Hearing Act "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his original trial or sentencing hearing." *People v. Pitsonbarger*, 793 N.E.2d 609, 618 (Ill. 2002). "Only one postconviction proceeding is contemplated under the Act, and successive petitions may only be filed with leave of the court." *People v. Griffin*, 240 N.E.3d 479, 489 (Ill. 2024). Leave to file a successive petition may be granted "if a petitioner can establish cause and prejudice for not raising the claim in an initial postconviction petition." *Id.* "A petitioner shows cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial postconviction proceedings" and

---

[2] On direct appeal, as a part of Petitioner's argument that the evidence was insufficient to support his convictions, Petitioner argued that Boey's testimony was unbelievable. Doc. 27-1 at 32. He did not, however, argue that the prosecution knowingly suborned perjury.

"shows prejudice by demonstrating that the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* "The second exception … applies when allowing the filing of a successive postconviction petition would avert a 'fundamental miscarriage of justice.'" *Id.* "For this second exception to apply, petitioner must show actual innocence." *Id.*

Petitioner has not argued that any objective factor impeded his ability to raise his current claims previously, or that he is actually innocent. The Court notes that Petitioner has previously argued that post-conviction counsel was ineffective for refusing to pursue claims that Petitioner wanted to raise in post-conviction proceedings. Doc. 27-8 at 20. However, the Illinois Supreme Court has held that the ineffectiveness of post-conviction counsel does not warrant leave to file a second post-conviction petition. *See People v. Flores*, 606 N.E.2d 1078, 1086 (Ill. 1992); *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) ("Deficiencies attributable to errors and neglects of the petitioner's lawyer do not justify a second opportunity."). Thus, even if Petitioner had argued good cause on this basis, this Court could not conclude that Illinois courts would grant Petitioner leave to file a successive post-conviction petition. Nor has Petitioner provided any basis to conclude that he is actually innocent. By his own admissions, Petitioner was present at the scene of a triple homicide and then drove away with the shooters and accompanied them as they disposed of the murder weapons. Two of those individuals testified that Petitioner also had a firearm and was actively involved in the shootings. And a street gang expert testified that Petitioner was the third-highest ranking member of the gang to which all of the shooters belonged. There is simply no basis to conclude that Petitioner is not at least guilty under an accountability theory of liability.

Because the Court does not believe Petitioner would be allowed to file a successive post-conviction petition in Illinois state court, Petitioner has procedurally defaulted his claims. Thus, habeas review by this Court is barred unless Petitioner "demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010); *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018). The burden is on Petitioner to provide a basis to excuse procedural default. *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1050 (7th Cir. 2001).

Petitioner does not argue that his default should be excused, and for the reasons previously stated, the Court perceives no justification for such a finding. "Because there is no Sixth Amendment right to counsel on collateral review, attorney error in postconviction proceedings is not cause to excuse a procedural default." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018). Moreover, nothing in the record or briefing before the court suggests that failure to consider the merits of the claims here will result in a fundamental miscarriage of justice. Petitioner's habeas corpus petition is therefore denied.

The Court also finds that a certificate of appealability should not issue. When a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has not made that showing here, and the Court does not believe that jurists of reason would find debatable the Court's ruling that Petitioner's claims are procedurally defaulted.

## CONCLUSION

For the reasons stated herein, the habeas corpus petition is denied. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated above. The Clerk is instructed to enter a Rule 58 Judgment in favor of Respondent and against Petitioner.

Dated: October 29, 2025

_____
APRIL M. PERRY
United States District Judge